CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 30 2014

JULIA C. DUDLEY, CLERK
BY: /s/ _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID ALLEN PLUNKETT, | )<br>) Civil Action No. 7:13CV00387 |
| Plaintiff, | )<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, | )<br>) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendant. | ) |

The plaintiff, David A. Plunkett, filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Plaintiff also challenges the date of disability onset established by the Commissioner for purposes of plaintiff's application for supplemental security income benefits under 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision that plaintiff was not under a disability at any time prior to the termination of his insured status, and that he did not become disabled, within the meaning of the Act, until April 10, 2012. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

David A. Plunkett was born on June 22, 1957 and eventually completed his high school education. He also finished two years in college. Plaintiff has worked as a general laborer, carpenter, painter, and maintenance man in an apartment complex. He last worked on a regular basis in 2009. On August 3, 2009, Mr. Plunkett filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that he became disabled for all forms of substantial gainful employment on May 1, 2009, due to pain in his back and lower extremities, ruptured tendon, and nerve grafts. Mr. Plunkett now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act through the fourth quarter of 2009, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before December 31, 2009. See generally, 42 U.S.C. § 423(a).

Mr. Plunkett's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 10, 2012, the Law Judge also ruled that Mr. Plunkett is not disabled. The Law Judge found that plaintiff suffers from several severe impairments including history of varicose and spider veins of the lower extremities; diabetes 2 controlled with medication; arthritis; degenerative disc disease; degenerative joint disease; hypertension; and chronic obstructive pulmonary disease. Because of these impairments, the Law Judge determined that plaintiff is disabled for all of his past relevant work roles. However, the Law Judge found that plaintiff retains sufficient functional capacity to perform a limited range of light work activity. The Law Judge assessed Mr. Plunkett's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can never crawl or climb ladders, ropes, and scaffolds, and the claimant can no more than occasionally kneel, crouch, stoop, balance, or climb stairs or ramps. The claimant must avoid even moderate exposure to dust, fumes, odors, chemicals and gases and even moderate exposure to hazards.

(TR 37). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Mr. Plunkett retained sufficient functional capacity for several specific light work roles at all relevant times. Accordingly, the Law Judge ultimately concluded that Mr. Plunkett is not disabled, and that he is not entitled to benefits under either federal program. See generally, 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Mr. Plunkett sought review of the Administrative Law Judge's rulings by the Social Security Administration's Appeals Council. The Appeals Council rendered its decision on June 25, 2013. Stated succinctly, the Appeals Council adopted the Law Judge's findings and conclusions as regards plaintiff's application for disability insurance benefits. However, the Appeals Council held that plaintiff became disabled for purposes of his application for supplemental security income benefits as of April 10, 2012. The Appeals Council noted that, under the findings of the Administrative Law Judge, including residual functional capacity for no more than light exertion, the medical vocational guidelines direct a determination of disabled as of June 21, 2012, the day before plaintiff's fifty-fifth birthday.[1] See 20 C.F.R. § 416.969 and Rule 202.06 of Appendix 2 to Subpart P of the Administrative Regulations, Part 404. Noting that "the age categories will not be applied

---

[1] While the Administrative Law Judge did not find it necessary to make a finding as to whether plaintiff possesses transferable skills, the Appeals Council assumed, for purposes of its evaluation, that he does not. (TR 15).

3

mechanically in a borderline age situation when the individual is within a few days to a few months of attaining an older age category and application of the older age category will result in a finding of disabled," see 20 C.F.R. § 416.963(b), the Appeals Council assumed, for purposes of the guidelines, that Mr. Plunkett became disabled on April 10, 2012, the date of the Law Judge's hearing decision. Challenging the denial of his application for disability insurance benefits, and the onset date established for purposes of his claim for supplemental security income benefits, Mr. Plunkett has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

While the court believes that this is a very close case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mr. Plunkett suffers from poor circulation in his lower extremities, degenerative arthritis in his back and in multiple joints, diabetes, hypertension, and chronic obstructive pulmonary disease. The medical record confirms that plaintiff's diabetes and hypertension are subject to reasonable medical control. Plaintiff's chronic obstructive pulmonary disease is severe, and results in environmental restrictions. Nevertheless, the medical record supports the Law Judge's finding that plaintiff's breathing problems do not prevent

4

performance of lighter levels of exertion. However, Mr. Plunkett's degenerative arthritis and circulatory problems substantially limit his capacity for work activity. If these problems were so severe as to prevent performance of anything more than sedentary levels of exertion as of the date of alleged disability onset, the medical vocational guidelines would have directed a determination of disabled in Mr. Plunkett's case. See Rule 201.14 of Appendix 2 to Subpart P of the Administrative Regulations Part 404. Thus, the critical issue on appeal is whether there is substantial evidence to support the Law Judge's determination, as adopted by the Appeals Council, that Mr. Plunkett retained sufficient functional capacity for a limited range of light work activity at all relevant times.

Shortly after Mr. Plunkett filed his application for benefits, the state disability agency referred plaintiff for consultative examination by Dr. William H. Humphries. Dr. Humphries is a board certified emergency medicine specialist. Dr. Humphries completed a medical examination on October 29, 2009. Based on his physical findings, Dr. Humphries listed diagnoses and impressions as follows:

> DIAGNOSES:
>
> 1. Hypertension, mild.
> 2. DJD, mild in both hands, and moderate in both feet and ankles
> 3. COPD, mild
> 4. Chronic lumbar strain.
> 5. DJD, mild to moderate in both knees
> 6. Venous insufficiency, moderately severe in right lower extremity, and mild in left lower extremity.
>
> Based on objective findings of this evaluation, the examinee would be limited to sitting six hours in an eight-hour workday, to standing and walking two hours in an eight-hour workday, to lifting 25 lbs occasionally, and 10 lbs frequently.

> He would be limited to no climbing, kneeling or crawling. There would be no restriction regarding stooping or crouching. He should avoid heights and hazards and fumes.

(TR 323-24). Thus, under Dr. Humphries' assessment, Mr. Plunkett was disabled for anything more than sedentary levels of work.

The Administrative Law Judge, and the Appeals Council, discounted Dr. Humphries' finding as to plaintiff's residual functional capacity. The Law Judge relied on reports completed by Dr. John C. Fraser, a board certified neurosurgeon, who first saw Mr. Plunkett in 2010, after Dr. Humphries' consultative evaluation. Based on objective medical studies, Dr. Fraser reported that he was unable to detect any cause for plaintiff's complaints of severe and debilitating musculoskeletal discomfort. Dr. Fraser recommended physical therapy and exercise. The court believes that Dr. Fraser's reports support the Law Judge's finding of residual, musculoskeletal capacity for light levels of activity. The Law Judge also relied on reports from nonexamining state agency physicians in finding residual functional capacity for a limited range of light exertion. Finally, in terms of plaintiff's circulatory problems, the Law Judge relied on results from Doppler testing in August of 2010, which were interpreted as normal. (TR 391).

As a general rule, in reviewing social security cases, the court has difficulty finding substantial evidence to support the Commissioner's rejection of reports from a consultative medical examiner, which are favorable to the claimant. After all, if consultative reports from physicians selected by the state disability agency are to be rejected, it makes little sense to refer claimants for such medical examinations. However, in the instant case, the court must agree that the Law Judge's decision not to fully credit Dr. Humphries' report was reasonable and consistent with the later medical evidence in Mr. Plunkett's case. As noted above, the Law Judge relied on reports from Dr.

6

Fraser. The simple fact is that plaintiff was referred to Dr. Fraser by plaintiff's family doctor at the Free Clinic. Under 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5), it is provided that more weight should be accorded to the opinion of a specialist, such as Dr. Fraser. Moreover, the Doppler testing cited by the Law Judge failed to document any significant circulatory problems in plaintiff's lower extremities. Inasmuch as Dr. Humphries did rely on plaintiff's musculoskeletal problems and venous insufficiency in making his work-related assessment, the court must agree that the later medical evidence does support the Law Judge's decision not to accord controlling weight to Dr. Humphries' medical findings and opinions.

In summary, the court finds substantial evidence to support the opinions of the Law Judge and Appeals Council that Mr. Plunkett retained sufficient functional capacity for a limited range of light work activity at all relevant times. The Law Judge relied on testimony from a vocational expert in determining that Mr. Plunkett retained sufficient functional capacity to perform several specific light work roles existing in significant number in the national economy. The court believes that the expert's evaluation of the vocational factors, and the assumptions under which the expert was asked to deliberate, are both reasonable and consistent with the evidence in Mr. Plunkett's case. The court finds substantial evidence to support the Law Judge's reliance on the testimony of the vocational expert. Thus, the court concludes that the Commissioner's final decision must be affirmed.

In appealing to this court, Mr. Plunkett argues that the Law Judge erred in discounting Dr. Humphries' work-related assessment. However, the results from the Doppler waveform testing speak for themselves. Moreover, unlike Dr. Humphries, Dr. Fraser relied on objective diagnostic findings in concluding that plaintiff's musculoskeletal problems are not so severe as to prevent physical therapy and performance of light exercise. For example, after ordering various diagnostic

7

studies at the time of his initial contact with Mr. Plunkett, Dr. Fraser reported back to plaintiff's family doctor on June 28, 2010 as follows:

> Mr. Plunkett returns to discuss his studies. There is some confusion in the transcription of my previous note. The point that was being made is that his MRI suggested an etiology for a possible upper lumbar radiculopathy but his described leg pain was consistent with a lower lumbar syndrome. A myelogram shows "mild indentation" on the right side at more than one level, but the nerve roots fell out. On the CT, multiple level degenerative disk disease is again seen but with only mild foraminal compromise. An EMG is normal. He is complaining of "stabbing pains" in the right side of his abdomen although most of his pain is in the low back, abdomen, groin and calf with "burning and stinging" in the right thigh and numbness at times in the anterior thigh. There is numbness at all times in the lower leg. Some of these symptoms might represent an upper lumbar radiculopathy. For most [of] them I have no structural explanation. I do not recommend surgery. I would recommend further conservative treatment, physical therapy, exercises and so on. I would be happy to see him again should a new problem arise.

(TR 380). Dr. Fraser saw Mr. Plunkett again in August of 2012, and ordered flexion/extension x-rays, an up-to-date MRI, and an EMG of the right leg. On September 21, 2012, Dr. Fraser wrote as follows:

> Mr. Plunkett returns to discuss his studies. The MRI shows a somewhat triangular canal at L3-4 and 4-5 due to facet hypertrophy, but the foramina look okay. He has marked facet arthropathy at L2-3 as well. Flexion/extension x-rays show no instability. His EMG shows neuropathic changes but no active radiculopathy. He continues to smoke. He says that he had "a very difficult time" after the EMG. He says that his legs "nearly buckled under me" three times as he walked from the office to his car on that occasion. He says that the legs actually did give away causing him to fall after he got home. We discussed again was [sic] is the worst part of his pain and he says it can be either his back or his legs and he gets cramping at night.
>
> **PHYSICAL EXAMINATION:** He complains of pain during the normal maneuvers of the examination but once again I can find no focal motor or sensory deficit. He is able to walk on his heels and toes, do knee bends well on either leg. There is no weakness in the hallucis longus. Straight-leg raise is negative. Ankle jerks are absent bilaterally.

8

> **ASSESSMENT/PLAN:** So far I have not identified a neurosurgically correctable pathology that would account for his leg symptoms. I have requested a lumbar myelogram. I will see him back after it has been done.

(TR 417-18).

Finally, after reviewing Mr. Plunkett's myelogram, Dr. Fraser reported on November 24, 2012 as follows:

> Mr. Plunkett returns to review his myelogram. It is reported to show no nerve root compromise. I have reviewed the images and would agree with that. I see that there was a late cancellation yesterday due to transportation, and he got a next-day appointment for today.
>
> On today's examination, he is able to walk on his heels, toes, and hop on either leg. Reflexes are normal and symmetrical. I do not find any focal motor or sensory deficit.
>
> He says that he walks. He reports no other exercise program. He has had no physical therapy since 2000. He quit work 05/2009. He continues to smoke. I think it would be reasonable to consider more physical therapy. He is not on any anti-inflammatory medication. I do not know if there is a specific contraindication to that. I do not recommend surgery. I have given him the Williams exercises to do. I would be happy to reevaluate him should a new problem arise that might lend itself to neurosurgical intervention.

(TR 437-38). Given Dr. Fraser's comments, which were based on a variety of diagnostic studies, the court is constrained to conclude that the Law Judge properly discounted Dr. Humphries' earlier assessment.

On appeal, Mr. Plunkett also contends that the Law Judge improperly discounted the testimony given by plaintiff at the administrative hearing on March 22, 2012. Without question, Mr. Plunkett's testimony indicates that he is no longer able to do more than sedentary work activity on a regular and sustained basis. However, in terms of plaintiff's subjective complaints, it must be noted that, in order for pain to be deemed disabling, there must be objective medical evidence

9

establishing some condition that could reasonably be expected to produce the pain alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). In the instant case, as outlined above, the court believes that the objective evidence simply fails to document the existence of any medical condition which could be expected to prevent lighter forms of work activity. Indeed, the neurosurgeon, Dr. Fraser, clearly contemplated that plaintiff should be capable of engaging in physical therapy and light exercise, given the results from the objective studies. Dr. Fraser noted no unusual clinical findings. In short, the court finds substantial evidence to support the Law Judge's resolution of the credibility issues in Mr. Plunkett's case.

In affirming the final decision of the Commissioner, the court does not suggest that Mr. Plunkett is free of all pain in his back and lower extremities. It is essentially undisputed that plaintiff has experienced degenerative changes and circulatory problems which prevent performance of the levels of physical activity in which he formerly engaged. However, the fact remains that, despite multiple diagnostic tests and studies, no doctor has identified any mechanical problem or circulatory impairment which could be expected to prevent lighter levels of physical exertion. It is well settled that the inability to do work without any discomfort does not of itself render a claimant totally disabled. Craig v. Chater, supra, 594-95. The court believes that the Commissioner considered all of the subjective factors reasonably supported by the record in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the

10

Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. <u>Laws v. Celebrezze</u>, <u>supra</u>. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 30th day of September, 2014.

_/s/ Glen Conrad_
Chief United States District Judge